IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| Skokie Clavey, LLC | ) | No. 10 B 49426 |
| | ) | |
| Debtor. | ) | *Hon. Bruce W. Black* |

## FINAL ORDER APPROVING AND AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL THROUGH FEBRUARY 1, 2011

This cause came on to be heard upon the motion (the "Motion") of Debtor Skokie Clavey, LLC ("Debtor") for the entry of an order approving the Debtor's use of cash collateral through February 1, 2011; the Debtor having represented that it needs the use of cash collateral to continue its operations; the Debtor having represented that a situation exists in which it needs immediate funds to pay certain expenses in the short-term to protect its assets; the Debtor having stipulated that (a) as of the Petition Date Fifth Third Bank ("Fifth Third") was owed $2,532,000.43 plus accrued fees, costs, and expenses; (b) repayment of Fifth Third's claim is secured by the Property commonly known as 332 Skokie Valley Rd., Highland Park, Illinois 60035 that constitutes the Debtor's primary asset (the "Property"); (c) as of the Petition Date Bradley Emalfarb ("Brad") was owed $350,000.00 plus accrued fees, costs and expenses; and (d) repayment of Brad's claim is secured by the Property; due notice having been provided to all creditors herein, as well as the United States Trustee and both Richard Kahan and Tony Kahan, and no further notice being required; the Court having conducted a Final Hearing with respect to the Debtor's proposed use of Cash Collateral on January 19, 2011 at which no objections thereto were raised; the Debtor having obtained the consent of Fifth Third and Brad with respect to its proposed use of Cash Collateral prior to the Final Hearing; and the Court having reviewed and considered the Motion and being otherwise fully advised in the premises; the Court has concluded to permit the Debtor's use of Cash Collateral as follows:

## FINDINGS

A. On November 3, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). Pursuant to Sections 1107 and 1108 of the Code, the Debtor has retained possession of its assets and is thereby authorized to continue the operation and management of its business as Debtor-In-Possession.

B. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §157(b)(2)(A), (C) and (M). Venue of the Debtor's case and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Neither an examiner nor trustee has been appointed in this case.  No official committee representing any of the unsecured creditors has been appointed.

C. Fifth Third asserts a claim against the Debtor of approximately $2,532,000.43 that is secured by a first-priority security interest in the Property and the Cash Collateral as defined below. Copies of the documents demonstrating Fifth Third's security interest are attached hereto as <u>Group Exhibit 1</u>.

D. Brad asserts a claim against the Debtor of approximately $350,000.00 that is secured by a second-priority security interest in the Property and the Cash Collateral as defined below. Copies of the documents demonstrating Brad's security interest are attached hereto as <u>Exhibit 2</u>.

E. The Debtor's continued operation depends upon its ability to pay certain business expenses such as property insurance, utilities, waste management and others set forth in the proposed Budget[1],

---

[1] The Allowed Expenses within the Budget shall be limited exclusively to monthly projections set forth therein. Any annual projections set forth within the Budget are included for reference purposes only, and Fifth Third does not consent to the incorporation of annual expenses into the Allowed Expenses. In submitting the Budget to the Court, the Debtor shall not be construed to have made any admissions regarding liability towards any creditors, nor does it waive any remedies or defenses with respect to any creditor.

(the "Budget") attached hereto as <u>Exhibit 3</u>, as well as the following (collectively, including the budget, the "Allowed Expenses"):

| | |
|---|---|
| (1) Fifth Third Bank | $ 9,000.00 |
| (2) Travelers Insurance | $   859.50 |
| (3) ComEd Pole Lights | $   474.30 |
| (4) City of Highland Park | $   346.02 |
| (5) Waste Management | $   516.06 |
| (6) North Shore Sanitary District | $   365.31 |
| (7) JD Flores Landscaping/Snow Plow | $1,2000.00 |
| (8) DK Gardens Landscaping | $   600.00 |
| (9) Advantage Building Systems | $   700.00 |

The Debtor proposes to utilize its available cash, income and the proceeds from the collection of its accounts receivable (the "Cash Collateral") to pay the Allowed Expenses through February 1, 2011 (the "Termination Date"), subject to the terms of this Order.

F. The Cash Collateral as defined above constitutes "cash collateral" as defined in Section 363 of the Code, which cannot be utilized by the Debtor without the Court's approval or the consent of both Fifth Third and Brad. Fifth Third has a first-priority security interest in the Property and the Cash Collateral. Brad has a second-priority security interest in the same.

G. Pursuant to the First Interim Order Authorizing Debtor To Use Cash Collateral entered on January 13, 2011, both Fifth Third and Brad have consented to the Debtor's proposed use of Cash Collateral.

H. By continuing to operate on the Property and to use the Cash Collateral to pay the Allowed Expenses, the Debtor shall satisfy its requirement to provide adequate protection to Fifth Third and Brad through the Termination Date.

## ORDER

1. Pursuant to §363 of the Code, the Debtor is authorized to pay the Allowed Expenses pursuant to the terms set forth in this Order. Such authorization is expressly limited until the Termination Date and may not be extended other than on the express written consent of both Fifth Third and Brad or further order of this Court. Moreover, absent such an extension, the Debtor shall immediately cease to use the Cash Collateral. The Debtor shall reserve the right to seek Court authorization to continue to use Cash Collateral. Fifth Third and Brad shall reserve the right to oppose such relief.

Dated this _____ day of January, 2011.

Enter: _____
Hon. Bruce W. Black.

2 0 JAN 2011

**RECORDATION REQUESTED BY:**

Crowley Barrett & Karaba, Ltd.
20 S. Clark Street, Suite 2310
Chicago, IL 60603-1806
Attention: Tonya M. Parravano, Esq.

**WHEN RECORDED MAIL TO:**

Crowley Barrett & Karaba, Ltd.
20 S. Clark Street, Suite 2310
Chicago, IL 60603-1806
Attention: Tonya M. Parravano, Esq.

**THIS INSTRUMENT PREPARED BY:**

Crowley Barrett & Karaba, Ltd.
20 S. Clark Street, Suite 2310
Chicago, IL 60603-1806
Attention: Tonya M. Parravano, Esq.



Image# 040761790016 Type: MTG
Recorded: 12/21/2006 at 09:55:06 AM
Receipt#: 2006-00021901
Total Amt: $51.00 Page 1 of 16
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File **6109582**

88 000 4150 D1
PAPP

## CONSTRUCTION MORTGAGE

**THIS MORTGAGE** is dated as of December 13, 2006, between SKOKIE CLAVEY LLC, an Illinois limited liability company ("Grantor") and FIFTH THIRD BANK (CHICAGO), a Michigan banking corporation ("Lender").

## SECTION 1: GRANT OF MORTGAGE

1.1     **Grant of Mortgage.** For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the real property commonly known as <u>316 Skokie Valley Road, Highland Park, Illinois</u>, and legally described on the attached Exhibit A, together with all Improvements; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters (collectively, the "Real Property"). The Real Property tax identification number is shown on the attached Exhibit A.

1.2     **Construction Mortgage.** To the fullest extent possible, this Mortgage shall be deemed a "construction mortgage" for the purposes of Article 9 of the Illinois Uniform Commercial Code, 810 ILCS 5/9-101 et seq.

1.3     **Leases and Rents.** Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

Exhibit 1

**1.4   SCOPE. THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE PERSONAL PROPERTY AND RENTS, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS UNDER THIS MORTGAGE, THE LOAN AGREEMENTS AND THE RELATED DOCUMENTS. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STATUTORY LIENS, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE TERMS SET FORTH HEREIN.**

## SECTIONS 2: GRANTOR'S AGREEMENTS AND COVENANTS

**2.1   Payment and Performance.**   Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due, and shall strictly perform all of Grantor's obligations under this Mortgage.

**2.2   Possession and Maintenance of the Property.**   Grantor agrees that the following provisions shall govern Grantor's possession and use of the Property:

**(a)   Possession and Use.**   Until the occurrence of an Event of Default, Grantor may: (i) remain in possession and control of the Property; and (ii) use, operate or manage the Property. To the extent that Grantor has executed an Assignment of Rents in favor of Lender, Grantor's rights to collect any Rents from the Property shall be governed by said Assignment of Rents.

**(b)   Duty to Maintain.**   Grantor shall maintain, and cause its lessees to maintain, the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**(c)   Hazardous Substances.**   The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Mortgage, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents and warrants to Lender that: (i) during the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any Person on, under, or about the Property; (ii) there has not been (A) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance by any Person on or under the Property or (B) any actual or threatened litigation or claims of any kind by any Person relating to such matters; and  (iii) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, or about the Property except in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Grantor authorizes Lender and its agents to enter upon the Property

2

to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for hazardous waste. Grantor hereby (x) releases and waives any present and future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (y) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**(d)  Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**(e)  Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**(f)  Lender's Right to Enter.** Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**(g)  Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**(h)  Duty to Protect.** Grantor agrees neither to abandon nor leave the Property unattended. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**2.3   Taxes and Liens.** Grantor agrees to comply with the following provisions regarding taxes and liens:

3

(a)    **Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay, and cause any lessee to pay (as appropriate), when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens, except for the lien of taxes and assessments not due, and except as otherwise provided in the following subsection (b).

(b)    **Right To Contest.** Grantor will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim (collectively the "Charges") so long as: (A) the legality of the same shall be promptly contested in good faith by appropriate proceedings; (B) Grantor shall have deposited with Lender cash, a sufficient corporate surety bond or other security satisfactory in form and substance to Lender in an amount adequate to provide for the release of such Charge plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Property; (C) such contest operates to suspend collection of the Charge; and (D) none of the Property is subject to forfeiture or loss of any security interest (or the priority thereof) by reason of the institution or prosecution of such contest as determined by Lender in its reasonable discretion. Grantor, upon demand of Lender, will furnish to Lender evidence of payment of the indebtedness and obligations, including any assessments, taxes, charges, levies, liens and claims and will authorize the appropriate obligor or governmental official to deliver to Lender at any time a written statement of any indebtedness and obligations including any Charges. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

(c)    **Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

(d)    **Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such work, services, or materials.

2.4    **Property Damage Insurance and Proceeds.** Grantor agrees to comply with the provisions of the Loan Agreements relating to insurance and casualty proceeds.

2.5    **Tax and Insurance Reserves.** Grantor agrees to establish reserve accounts as provided for in the Loan Agreements.

2.6    **Expenditures by Lender.** If Grantor fails to comply with any provision of this Mortgage, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the Default Rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during the

4

remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this section shall be in addition to any other rights or any remedies to which Lender may be entitled on account of an Event of Default. Any such action by Lender shall not be construed as curing the Event of Default so as to bar Lender from any remedy that it otherwise would have had.

**2.7    Warranty; Defense of Title; Compliance.** Grantor makes the following warranties and agreements regarding title to the Property and compliance with applicable laws:

(a)    **Title.** Grantor warrants that: (i) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens, security interests and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (ii) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

(b)    **Defense of Title.** Subject to the exception in subsection (a) above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all Persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice (and at Grantor's expense), and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

(c)    **Compliance With Laws.** Grantor represents and warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**2.8    Condemnation.** Grantor agrees to comply with the provisions of the Loan Agreements regarding condemnation of the Property.

**2.9    Imposition of Taxes, Fees and Charges by Governmental Authorities.** Grantor agrees to comply with the following provisions regarding governmental taxes, fees and charges:

(a)    **Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

(b)    **Taxes.** The following shall constitute taxes to which this section applies: (i) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (ii) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (iii) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (iv) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

5

(c)     **Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (i) pays the tax before it becomes delinquent, or (ii) contests the tax as provided in Section 2.3(b) and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

## SECTION 3: SECURITY AGREEMENT

**3.1     Security Agreement.** This Mortgage shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**3.2     Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon an Event of Default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Lender and make it available to Lender within three (3) days after notice from Lender.

**3.3     Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code), are in Section 7.2(l) of this Mortgage.

## SECTION 4: FURTHER ASSURANCES; ATTORNEY-IN-FACT

**4.1     Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, control agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Grantor under the Note, this Mortgage, and the Related Documents, and (b) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or agreed to the contrary by Lender in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this Section.

**4.2     Attorney-in-Fact.** If Grantor fails to do any of the things referred to in Section 4.1, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's opinion, to accomplish the matters referred to in Section 4.1.

## SECTION 5: DUE ON SALE; FULL PERFORMANCE

6

**5.1    Due on Sale – Consent by Lender.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, Lender shall not exercise this option if such exercise is prohibited by federal law or by Illinois law.

**5.2    Full Performance.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

## SECTION 6: EVENTS OF DEFAULT; REMEDIES

**6.1    Events of Default.** A default in the performance of any obligation hereunder or any Event of Default under the Loan Agreements shall constitute an Event of Default hereunder.

**6.2    Rights and Remedies.** Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law or equity:

**(a)    Accelerate Indebtedness.** Lender shall have the right without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment fee which Grantor would be required to pay.

**(b)    UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**(c)    Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If Lender collects the Rents, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subsection either in person, by agent, or through a receiver.

(d) **Mortgagee in Possession or Receiver.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed without the requirement of the posting of any bond, to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

(e) **Sale of Property and Judicial Foreclosure.** Lender shall be permitted to: (i) immediately judicially foreclose this Mortgage; or (ii) if allowed under Illinois law at the time of such Event of Default, immediately sell the any part of the Property either in whole or in separate parcels, as prescribed by Illinois law, under power of sale, which power is hereby granted to Lender to the full extent permitted by Illinois law, and thereupon, to make and execute to any purchaser(s) thereof deeds of conveyance pursuant to applicable law.

(f) **Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Mortgage.

(g) **Other Rights and Remedies.** Lender shall have all other rights and remedies provided in this Mortgage, the Loan Agreements, or the Note or available at law or in equity.

6.3 **Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

6.4 **Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

6.5 **Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation of Grantor under this Mortgage after failure of Grantor to perform shall not affect Lender's right to declare an Event of Default and exercise its remedies under this Mortgage.

6.6 **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the Default Rate under the Note. Expenses covered by this Section include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection

8

services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance. Grantor also will pay any court costs, in addition to all other sums provided by law.

## SECTION 7: DEFINITIONS; MISCELLANEOUS PROVISIONS.

**7.1    Definitions.** The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Illinois Uniform Commercial Code (810 ILCS 1/1 et seq. as amended from time to time, the "Uniform Commercial Code"). All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Affiliate.** The word "Affiliate" means, with respect to any Person (the "subject"), any Person (i) which directly or indirectly controls or is controlled by, or is under common control with, the subject, (ii) which beneficially owns or holds 5% or more of the equity interest of the subject, or (iii) 5% or more of the equity interest of which is beneficially owned or held by the subject or its Affiliates. The term "control" means the possession, directly or indirectly, individually or in concert with others, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

**Borrower.** The word "Borrower" means SKOKIE CLAVEY LLC, an Illinois limited liability company, together with its successors and permitted assigns.

**CERCLA.** The word "CERCLA" has the meaning set forth in Section 2.2(c).

**Event of Default.** The word "Event of Default" has the meaning set forth in Section 6.1.

**Grantor.** The word "Grantor" means SKOKIE CLAVEY LLC, an Illinois limited liability company, its successors and permitted assigns. The Grantor is the mortgagor under this Mortgage.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, fixtures, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal and interest payable under the Note, and any amounts expended or advanced by Lender to discharge obligations of Borrower or Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. In addition to the Note, the word "Indebtedness" includes all obligations, debts and liabilities, plus interest thereon, of Borrower or Grantor to Lender, or any one or more of them, as well as all claims by Lender against Borrower or Grantor, or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, absolute or contingent, liquidated or unliquidated and whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor or otherwise, and whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations, and whether such Indebtedness may be or hereafter may

9

become otherwise unenforceable. Specifically, without limitation, this Mortgage secures not only the amount which Lender has presently advanced to Borrower under the Note, but also any future amounts Lender may advance to Borrower under the Note in its discretion within twenty (20) years from the date of this Mortgage to the same extent as if such future advance were made as of the date of the execution of this Mortgage. Lender may make advances to Borrower so long as Borrower complies with all the terms of the Note and Related Documents. At no time shall the principal amount of the Indebtedness secured by this Mortgage, not including sums advanced to protect the security of this Mortgage, exceed the Maximum Amount Secured.

**Lender.** The word "Lender" means FIFTH THIRD BANK (CHICAGO), a Michigan banking corporation, its successors and assigns. The Lender is the mortgagee under this Mortgage.

**Loan Agreement.** The words "Loan Agreement" mean that certain Construction Loan Agreement dated as of even date herewith between Borrower and Lender evidencing a construction loan in the amount of FOUR MILLION FIVE HUNDRED THIRTY-TWO THOUSAND AND NO/100 DOLLARS ($4,532,000.00), providing financing for the construction and development of a two-story, 21,844 square foot retail/office condominium building on the Property, consisting of four (4) Retail Units on the first floor, four (4) Condo Units on the second floor, and all related improvements, as such Loan Agreement may be amended from time to time.

**Maximum Amount Secured.** The words "Maximum Amount Secured" mean the amount of NINE MILLION SIXTY-FOUR THOUSAND AND NO/100 DOLLARS ($9,064,000.00).

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Personal Property and Rents.

**Note.** The word "Note" means that certain Non-Revolving Promissory Note executed by Borrower to Lender dated as of even date herewith in the principal amount of FOUR MILLION FIVE HUNDRED THIRTY-TWO THOUSAND AND NO/100 DOLLARS ($4,532,000.00), together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for such promissory note. The Note has a Maturity Date of December 13, 2007; provided, however, that subject to the terms and conditions hereof, upon Borrower's exercise of the Extension Option, the Maturity Date shall be extended to June 13, 2008. The Note has a variable rate of interest.

**Person.** The word "Person" means an individual or a corporation, partnership, trust, incorporated or unincorporated association, joint venture, joint stock company, limited liability company, government (or any instrumentality, division, agency, body or political subdivision thereof) or other entity of any kind.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds

10

(including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" have the meaning set forth in Section 1.1.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, financing statements, collateral assignments and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property, whether due now or later.

**SARA.** The word "SARA" has the meaning set forth in Section 2.2(c).

7.2    Miscellaneous Provisions.

(a)    **Entire Agreement; Amendments.**   This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of, or amendment to, this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

(b)    **Applicable Law.** This Mortgage and all acts, agreements, certificates, assignments, transfers and transactions hereunder, and all rights of the parties hereto, shall be governed as to validity, enforcement, interpretation, construction, effect and in all other respects by the internal laws and decisions of the State of Illinois, including, but not limited to, laws regulating interest, loan charges, commitment fees and brokerage commissions (without regard to conflicts of law principles). It is acknowledged and agreed by Grantor and Lender that the loan transaction evidenced hereby, bears a reasonable relationship to the State of Illinois.

(c)    **Consent to Jurisdiction.** To induce Lender to accept this Mortgage, Grantor irrevocably agrees that, subject to Lender's sole and absolute election, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT WILL BE LITIGATED IN COURTS HAVING SITUS IN LAKE COUNTY, ILLINOIS. GRANTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN LAKE COUNTY, ILLINOIS.

(d)    **Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

(e)    **Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

11

**(f)   Multiple Parties; Corporate Authority.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for **all** obligations in this Mortgage. To the extent that Grantor is a corporation, partnership or limited liability company, it hereby represents and warrants to Lender that the execution of this Mortgage has been authorized by all necessary corporate, partnership or limited liability company action, as the case may be.

**(g)   Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any Person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other Persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

**(h)   Successors and Assigns.** Subject to the limitations stated in this Mortgage on transfer of Grantor's interest in the Real Property or a change in ownership of Grantor, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance, extension or any other modification without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**(i)   Survival.** All warranties, representations, and covenants made by Grantor in this Mortgage or in any certificate or other instrument delivered by Grantor to Lender under this Mortgage shall be considered to have been relied upon by Lender and will survive the making of the loan secured hereby and delivery to Lender of the Related Documents, regardless of any investigation made by Lender or on Lender's behalf.

**(j)   Time Is of the Essence.** Time is of the essence in the performance of this Mortgage.

**(k)   Agency.** Nothing in this Mortgage shall be construed to constitute the creation of a partnership or joint venture between Lender and Grantor or any contractor. Lender is not an agent or representative of Grantor. This Mortgage does not create a contractual relationship with and shall not be construed to benefit or bind Lender in any way with or create any contractual duties by Lender to any contractor, subcontractor, materialman, laborer, or any other Person.

**(l)   Notices.** Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by another, or whenever any of the parties desires to give or serve upon another any communication with respect to this Mortgage, each such notice, demand, request, consent, approval, declaration or other communication shall be in writing and shall be delivered in person (by personal delivery, delivery service or reputable overnight courier service), or telecopied and confirmed immediately in writing by a copy mailed by United States mail, postage prepaid, addressed as hereafter set forth, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

12

(i)      If to Lender, at:

Fifth Third Bank (Chicago)
1701 West Golf Road
Tower I, Seventh Floor
Rolling Meadows, Illinois 60008
Attn:    Mr. Joseph J. Nitti
Tel: (847) 354-7158
Fax: (847) 354-7150

With a copy to:

Crowley Barrett & Karaba, Ltd.
20 South Clark Street
Suite 2310
Chicago, IL 60603
Attn: Tonya M. Parravano, Esq.
Tel: (312) 726-2468
Fax: (312) 726-2741

(ii)     If to Borrower, at:

Skokie Clavey LLC
440 Central Avenue
Highland Park, Illinois 60035
Attn:    Mr. Scott Emalfarb
Tel: (847) 432-6900
Fax: (847) 432-8950

With a copy to:

Emalfarb, Swan and Bain
440 Central Avenue
Highland Park, Illinois 60035
Attn: Hal Emalfarb, Esq.
Tel: (847) 432-6900
Fax: (847) 432-8950

or at such other address as may be substituted by notice given as herein provided. The giving of any notice required hereunder may be waived in writing by the party entitled to receive such notice. Every notice, demand, request, consent, approval, declaration or other communication hereunder shall be deemed to have been duly given or served on the date on which (i) personally delivered (whether in person, by delivery service, or by reputable overnight courier service), (ii) the date of the telecopy transmission (provided the confirmation mailing was sent as provided herein), or (iii) on the date of receipt if sent by the United States mail. Failure or delay in delivering copies of any notice, demand, request, consent, approval, declaration or other communication to the Persons designed above to receive copies, if any, shall in no way adversely affect the effectiveness of such notice, demand, request, consent, approval, declaration or other communication.

13

(m)     **Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

(n)     **Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS MORTGAGE, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b) OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON BEHALF OF GRANTOR AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY.

(o)     **Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Mortgage (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions.

(p)     **Lender's Discretion.** Whenever this Mortgage requires either Lender's consent, election, approval or similar action or otherwise vests in Lender the authority to make decisions and/or determinations, such actions shall be made or withheld in Lender's sole and absolute discretion, unless specifically provided otherwise and the granting of any consent, election, approval or similar action by Lender in any instance shall not constitute continuing consent, election, approval or similar action in subsequent instances where such is required.

(q)     **Waiver of Jury Trial.** GRANTOR AND LENDER EACH WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (i) UNDER THIS MORTGAGE OR ANY RELATED DOCUMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR ANY RELATED DOCUMENT OR (ii) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION HEREWITH, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. GRANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER OR ANY OTHER PERSON INDEMNIFIED UNDER THIS MORTGAGE ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

[SIGNATURE PAGE FOLLOWS]

14

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

SKOKIE CLAVEY LLC, an Illinois limited liability company

By: _____

Scott Emalfarb
Manager

### GRANTOR ACKNOWLEDGEMENT

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that SCOTT EMALFARB, as the Manager of SKOKIE CLAVEY LLC, an Illinois limited liability company, who are personally known to me to be the same person whose name is subscribed to the foregoing instrument as such Manager, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act and as the free and voluntary act of said LLC as aforesaid, for the uses and purposes therein set forth.

Given under my hand and notarial seal this 13 day of December, 2006.

_____
Notary Public

> "OFFICIAL SEAL"
> MARLENE H. SMART
> NOTARY PUBLIC STATE OF ILLINOIS
> My Commission Expires 03/26/2009

15

## EXHIBIT A

## LEGAL DESCRIPTION

PARCEL 1

LOT 3, EXCEPT THE SOUTH 60 FEET (AS MEASURED AT RIGHT ANGLES TO THE SOUTH LINE THEREOF) AND LOT 4, EXCEPT THE NORTH 77 FEET OF THE EAST 210.3 FEET, IN RIDMAN'S SUBDIVISION, BEING A SUBDIVISION IN THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 35, TOWNSHIP 43 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED ON NOVEMBER 20, 1979 AS DOCUMENT 2034786, IN BOOK 72 OF PLATS, PAGE 52, IN LAKE COUNTY, ILLINOIS.

PARCEL 2:

EASEMENT FOR THE BENEFIT OF PARCEL 1 AS CREATED BY THE DECLARATION OF EASEMENTS AND COVENANTS RECORDED AUGUST 8, 2005 AS DOCUMENT 5831532 FOR VEHICULAR ACCESS, TRUCK ACCESS AND PEDESTRIAN INGRESS AND EGRESS, AND FOR ACCESS TO USE OF THE TRASH ENCLOSURE, OVER AREAS COMMONLY KNOWN AS THE ANTON'S EASEMENT AREA, AND THE SC EASEMENT AREA MORE PARTICULARLY SHOWN ON EXHIBIT "A" ATTACHED THERETO.

Common Address:    316 Skokie Valley Road
                   Highland Park, Illinois

Permanent Index No.:   16-35-305-026

G:\CLIENTS\Fifth Third Bank (1996)\Skokie Clavey\Mortgage 120806.doc

16

**RECORDATION REQUESTED BY:**

Crowley Barrett & Karaba, Ltd.
20 S. Clark Street, Suite 2310
Chicago, IL 60603
Attention: Tonya M. Parravano, Esq.

**WHEN RECORDED MAIL TO:**

Crowley Barrett & Karaba, Ltd.
20 S. Clark Street, Suite 2310
Chicago, IL 60603
Attention: Tonya M. Parravano, Esq.

**THIS INSTRUMENT PREPARED BY:**

Crowley Barrett & Karaba, Ltd.
20 S. Clark Street, Suite 2310
Chicago, IL 60603
Attention: Tonya M. Parravano, Esq.

Image# 040761820013 Type: ASR
Recorded: 12/21/2006 at 09:57:05 AM
Receipt#: 2006-00021901
Total Amt: $48.00 Page 1 of 13
IL Rental Housing Fund: $10.00
Lake County IL Recorder
Mary Ellen Vanderventer Recorder
File **6109583**

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS ("Assignment") is dated as of December 13, 2006, between SKOKIE CLAVEY LLC, an Illinois limited liability company ("Grantor") and FIFTH THIRD BANK (CHICAGO), a Michigan banking corporation ("Lender").

### SECTION 1: ASSIGNMENT

1.1     **Assignment.** For valuable consideration, Grantor assigns and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the real property described on the attached Exhibit A.

1.2     **SCOPE.** THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS ASSIGNMENT, THE LOAN AGREEMENTS, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN ON THE TERMS SET FORTH HEREIN.

### SECTION 2: REPRESENTATIONS AND WARRANTIES

2.1     **Grantor's Representations and Warranties with Respect to the Rents.** With respect to the Rents, Grantor represents and warrants to Lender that:

(a)     **Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.



(b)   **Right to Assign.** Grantor has the full right, power, and authority to enter into this Assignment and to assign and convey the Rents to Lender.

(c)   **No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force. To the extent that Grantor has employed a manager or agent to collect the Rents, Grantor shall immediately inform such manager or agent of this assignment and such manager or agent shall attorn to the rights of Lender hereunder.

(d)   **No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as otherwise provided in this Assignment.

2.2   **Survival of Representations and Warranties.** Grantor understands and agrees that Lender is relying upon the above representations and warranties in making the loans under the Loan Agreements and Note. Grantor agrees that the foregoing representations and warranties shall be continuing in nature and shall remain in full force and effect until, unless otherwise specified herein, such time as the Indebtedness shall be paid in full, or until this Assignment shall be released, whichever is the last to occur.

## SECTION 3: PERFORMANCE; AGREEMENTS REGARDING RENTS

3.1   **Payment and Performance.** Except as otherwise provided in this Assignment, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no Event of Default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

3.2   **Lender's Right to Collect Rents.** Lender shall have the right at any time, and even though no Event of Default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

(a)   **Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

(b)   **Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; and remove any tenant or tenants or other persons from the Property.

(c)   **Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property

2

in proper repair and condition; and to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**(d)        Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Illinois and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**(e)        Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**(f)        Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**(g)        Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**(h)        No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**3.3        Application of Rents.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Default Rate charged under the Note from date of expenditure until paid.

**3.4        Full Performance.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Loan Agreements, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's interest in the Rents and the Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**3.5        Expenditures by Lender.** If Grantor fails to comply with any provision of this Assignment, or if any action or proceeding is commenced that would adversely affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the Default Rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Assignment also will secure payment of these amounts. The rights provided for in

3

this section shall be in addition to any other rights or any remedies to which Lender may be entitled on account of an Event of Default. Any such action by Lender shall not be construed as curing the Event of Default so as to bar Lender from any remedy that it otherwise would have had.

## SECTION 4: EVENTS OF DEFAULT; REMEDIES

**4.1    Events of Default.** A default in the performance of any obligation hereunder or any Event of Default under the Loan Agreements shall constitute an Event of Default hereunder.

**4.2    Rights and Remedies.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may, at its option, exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided at law or in equity:

(a)    **Accelerate Indebtedness.** Lender shall have the right without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment fee which Grantor would be required to pay.

(b)    **UCC Remedies.** Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

(c)    **Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If Lender collects the Rents, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subsection either in person, by agent, or through a receiver.

(d)    **Mortgagee in Possession and Receiver.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

(e)    **Other Rights and Remedies.** Lender shall have all other rights and remedies provided in this Assignment, the Loan Agreements or available at law or in equity.

**4.3    Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or take action to perform an obligation

4

of Grantor under this Assignment after failure of Grantor to perform shall not affect Lender's right to declare a default and exercise its remedies under this Assignment.

**4.4   Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all expenses incurred by Lender that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the Default Rate under the Note. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance. Grantor also will pay any court costs, in addition to all other sums provided by law.

## SECTION 5: DEFINITIONS; MISCELLANEOUS PROVISIONS.

**5.1   Definitions.** The following words shall have the following meanings when used in this Assignment. Terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Illinois Uniform Commercial Code (810 ILCS 1/1 et seq. as amended from time to time). All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Affiliate.** The word "Affiliate" means, with respect to any Person (the "subject"), any Person (i) which directly or indirectly controls or is controlled by, or is under common control with, the subject, (ii) which beneficially owns or holds 5% or more of the equity interest of the subject, or (iii) 5% or more of the equity interest of which is beneficially owned or held by the subject or its Affiliates. The term "control" means the possession, directly or indirectly, individually or in concert with others, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

**Assignment.** The word "Assignment" means this Assignment of Rents between Grantor and Lender, and includes without limitation all assignments and security interest provisions relating to the Rents.

**Borrower.** The word "Borrower" means SKOKIE CLAVEY LLC, an Illinois limited liability company, together with its successors and permitted assigns.

**Event of Default.** The words "Event of Default" mean any of the Events of Default set forth in Section 4.1 hereof.

**Grantor.** The word "Grantor" has the meaning set forth in the initial paragraph of this Assignment.

5

**Indebtedness.** The word "Indebtedness" means all amounts payable under the Note and any amounts expended or advanced by Lender to discharge obligations of Borrower or Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Assignment, together with interest on such amounts as provided in this Assignment. In addition to the Note, the word "Indebtedness" includes all obligations, debts and liabilities, plus interest thereon, of Borrower or Grantor to Lender, or any one or more of them, as well as all claims by Lender against Borrower or Grantor, or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, absolute or contingent, liquidated or unliquidated and whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor or otherwise, and whether recovery upon such Indebtedness may be or hereafter may become barred by any statute of limitations, and whether such Indebtedness may be or hereafter may become otherwise unenforceable. **At no time shall the principal amount of the Indebtedness secured by this Assignment, not including sums advanced to protect the security of this Assignment, exceed the Maximum Amount Secured.**

**Lender.** The word "Lender" has the meaning set forth in the initial paragraph of this Assignment.

**Loan Agreement.** The words "Loan Agreement" mean that certain Construction Loan Agreement dated as of even date herewith between Borrower and Lender evidencing a construction loan in the amount of FOUR MILLION FIVE HUNDRED THIRTY-TWO THOUSAND AND NO/100 DOLLARS ($4,532,000.00), providing financing for the development and condominium conversion of the Real Property, as such Loan Agreement may be amended from time to time.

**Maximum Amount Secured.** The words "Maximum Amount Secured" mean the amount of NINE MILLION SIXTY-FOUR THOUSAND AND NO/100 DOLLARS ($9,064,000.00).

**Note.** The word "Note" means that certain Non-Revolving Promissory Note executed by Borrower to Lender dated as of even date herewith in the principal amount of FOUR MILLION FIVE HUNDRED THIRTY-TWO THOUSAND AND NO/100 DOLLARS ($4,532,000.00), together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for such promissory note. The Note has a Maturity Date of December 13, 2007; provided, however, that subject to the terms and conditions hereof, upon Borrower's exercise of the Extension Option the Maturity Date shall be extended to June 13, 2008

**Person.** The word "Person" means an individual or a corporation, partnership, trust, incorporated or unincorporated association, joint venture, joint stock company, limited liability company, government (or any instrumentality, division, agency, body or political subdivision thereof) or other entity of any kind.

**Property.** The word "Property" means the Real Property, and all improvements thereon.

**Real Property.** The words "Real Property" mean the property, interests and rights described on the attached Exhibit A.

6

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, collateral assignments, financing statements, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all rents, revenues, income, issues, royalties, profits and other benefits derived from the Property, whether due now or later, including without limitation all Rents from all leases described on any exhibit attached to this Assignment.

**5.2   Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Assignment:

(a)   **Entire Agreement; Amendments.**   This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of, or amendment to, this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

(b)   **Applicable Law.**   This Assignment and all acts, agreements, certificates, assignments, transfers and transactions hereunder, and all rights of the parties hereto, shall be governed as to validity, enforcement, interpretation, construction, effect and in all other respects by the internal laws and decisions of the State of Illinois, including, but not limited to, laws regulating interest, loan charges, commitment fees and brokerage commissions (without regard to conflicts of law principles). It is acknowledged and agreed by Grantor and Lender that the loan transaction evidenced hereby, bears a reasonable relationship to the State of Illinois.

(c)   **Consent to Jurisdiction.**   To induce Lender to accept this Assignment, Grantor irrevocably agrees that, subject to Lender's election, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS ASSIGNMENT WILL BE LITIGATED IN COURTS HAVING SITUS IN LAKE COUNTY, ILLINOIS. GRANTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN LAKE COUNTY, ILLINOIS.

(d)   **Caption Headings.**   Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

(e)   **Merger.**   There shall be no merger of the interest or estate created by this Assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

(f)   **Multiple Parties; Corporate Authority.**   All obligations of Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in

7

this Assignment. To the extent that Grantor is a corporation, partnership, limited liability company, or trust it hereby represents and warrants to Lender that the execution of this Assignment has been authorized by all necessary corporate, partnership, limited liability company, or trust action, as the case may be.

(g)     **Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Assignment in all other respects shall remain valid and enforceable.

(h)     **Successors and Assigns.** Subject to the limitations stated in this Assignment on transfer of Grantor's interest in the Real Property or a change in ownership of Grantor, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance, extension or any other modification without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

(i)     **Survival.** All warranties, representations, and covenants made by Grantor in this Assignment or in any certificate or other instrument delivered by Grantor to Lender under this Assignment shall be considered to have been relied upon by Lender and will survive the making of the loan secured hereby and delivery to Lender of the Related Documents, regardless of any investigation made by Lender or on Lender's behalf.

(j)     **Time Is of the Essence.** Time is of the essence in the performance of this Assignment.

(k)     **Agency.** Nothing in this Assignment shall be construed to constitute the creation of a partnership or joint venture between Lender and Grantor or any Person. Lender is not an agent or representative of Grantor. This Assignment does not create a contractual relationship with and shall not be construed to benefit or bind Lender in any way with or create any contractual duties by Lender to any contractor, subcontractor, materialman, laborer, or any other Person.

(l)     **Notices.** Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by another, or whenever any of the parties desires to give or serve upon another any communication with respect to this Assignment, each such notice, demand, request, consent, approval, declaration or other communication shall be in writing and shall be delivered in person (by personal delivery, delivery service or reputable overnight courier service), or telecopied and confirmed immediately in writing by a copy mailed by United States mail, postage prepaid, addressed as hereafter set forth, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows:

8

(i)     If to Lender, at:

>       Fifth Third Bank (Chicago)
>       1701 West Golf Road
>       Tower 1, Seventh Floor
>       Rolling Meadows, Illinois 60008
>       Attn:    Mr. Joseph J. Nitti
>       Tel: (847) 354-7158
>       Fax: (847) 354-7150

With a copy to:

>       Crowley Barrett & Karaba, Ltd.
>       20 South Clark Street
>       Suite 2310
>       Chicago, IL 60603
>       Attn:  Tonya M. Parravano, Esq.
>       Tel: (312) 726-2468
>       Fax: (312) 726-2741

(ii)    If to Borrower, at:

>       Skokie Clavey LLC
>       440 Central Avenue
>       Highland Park, Illinois 60035
>       Attn:    Mr. Scott Emalfarb
>       Tel: (847) 432-6900
>       Fax: (847) 432-8950

With a copy to:

>       Emalfarb, Swan and Bain
>       440 Central Avenue
>       Highland Park, Illinois 60035
>       Attn:  Hal Emalfarb, Esq.
>       Tel: (847) 432-6900
>       Fax: (847) 432-8950

or at such other address as may be substituted by notice given as herein provided. The giving of any notice required hereunder may be waived in writing by the party entitled to receive such notice. Every notice, demand, request, consent, approval, declaration or other communication hereunder shall be deemed to have been duly given or served on the date on which (i) personally delivered (whether in person, by delivery service, or by reputable overnight courier service), (ii) the date of the telecopy transmission (provided the confirmation mailing was sent as provided herein), or (iii) on the date of receipt if sent by the United States mail. Failure or delay in

9

delivering copies of any notice, demand, request, consent, approval, declaration or other communication to the Persons designed above to receive copies, if any, shall in no way adversely affect the effectiveness of such notice, demand, request, consent, approval, declaration or other communication.

(m)   **Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Assignment.

(n)   **Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b) OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS ASSIGNMENT, ANY AND ALL RIGHTS OF REDEMPTION ON BEHALF OF GRANTOR AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY.

(o)   **Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Assignment (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Assignment shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or any of Grantor's obligations as to any future transactions.

(p)   **Lender's Discretion.** Whenever this Assignment requires either Lender's consent, election, approval or similar action or otherwise vests in Lender the authority to make decisions and/or determinations, such actions shall be made or withheld in Lender's sole and absolute discretion, unless specifically provided otherwise and the granting of any consent, election, approval or similar action by Lender in any instance shall not constitute continuing consent, election, approval or similar action in subsequent instances where such is required.

(q)   **Waiver of Jury Trial.** GRANTOR AND LENDER EACH WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (i) UNDER THIS ASSIGNMENT OR ANY RELATED DOCUMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR ANY RELATED DOCUMENT OR (ii) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION HEREWITH, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. GRANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER OR ANY OTHER PERSON INDEMNIFIED UNDER THIS ASSIGNMENT ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.